The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WHISPER LAKE DEVELOPMENTS, INC.,

    Plaintiff,

v.

SKAGIT HIGHLANDS HOMES, LLC; MTT HOMES 1, LLC; MTT CONSTRUCTION, LLC; MTT HOLDINGS, INC., THOMAS L. TOLLEN, III; MORGAN TOLLEN-LINDBERG; MATTHEW MAHAFFIE (in his official and personal capacities); DEAD GOAT PROPERTIES, LLC; MARK PERSONIUS (in his official and personal capacities); JON-PAUL SHANAHAN (in his official and personal capacities); ERIN PAGE (in her official and personal capacities); AMY KEENAN (in her official and personal capacities); THOMAS BRISSENDEN (in his official and personal capacities); and WHATCOM COUNTY,

    Defendants.

Case No. 2:24-cv-1909-BJR

**ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

## I.    INTRODUCTION

Plaintiff Whisper Lake Developments, Inc. ("Plaintiff") instituted this action against multiple private citizens and entities, as well as against Whatcom County and several individuals

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 1

(in their personal and official capacities) who are associated with the County. The lawsuit involves a parcel of land located in Whatcom County that Plaintiff sold to Defendant Skagit Highland Homes, LLC ("SHH") in 2022. Plaintiff alleges claims for breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, tortious interference with a contract, extortion, criminal profiteering, procedural due process violations, and civil rights violations under 42 U.S.C. § 1983.

Defendant Whatcom County ("the County") and the individual defendants associated with the County (collectively "the County Defendants") move to dismiss the claims asserted against them. Dkt. Nos. 38 and 39. Plaintiff opposes the motions. Dkt. No. 43. Having reviewed the motions, opposition, and replies thereto, the record of the case, and the relevant legal authority, the Court concludes that Plaintiff's federal allegations fail to state a claim on which relief may be granted and must be dismissed pursuant to Federal Rule 12(b)(6). The Court further declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses this case without prejudice.[1] The reasoning for the Court's decision follows.

## II. BACKGROUND

### A. The Whisper Lake Property

This dispute concerns a 38-acre parcel of land located in Whatcom County, Washington. Plaintiff acquired the land in 1994 for the purpose of subdividing and developing it into a residential neighborhood. To that end, in October 2009, Plaintiff submitted to the County an application to develop the land. The County commenced formal review of Plaintiff's application and between

---

[1] Plaintiff alleges that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Dkt. No. 33, Amended Comp. at ¶¶ 39-40.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 2

November 2009 and April 2014, the County and Plaintiff exchanged communications, memoranda, and submissions regarding, among other things, wetland delineation, hydrology, and critical areas review. Ultimately the Whatcom County Hearing Examiner recommended that the Whatcom County Council approve Plaintiff's application and on February 23, 2016, the Council approved the Whisper Lake Preliminary Plat ("the Preliminary Plat"). The Preliminary Plat preliminarily approved 145 buildable lots on the 38-acre parcel and called for the development to be done in nine phases. The parties refer to phases 1-3 as "the Division A Property" and phases 4-9 as "the Division B Property".  No wetlands were identified on the Preliminary Plat.

The Preliminary Plat had an expiration date of February 24, 2026, which meant that Plaintiff had to submit, and the County had to approve, a final flat for the property prior to that date. Thereafter, in February 2022, Plaintiff submitted an application for the final flat on the Division A Property and, on February 23, 2022, the County approved the Whisper Lake Division A Final Plat ("the Division A Final Plat"), which approved 37 single family residential lots on the Division A Property. Even though the Preliminary Plat had not identify any wetlands on the property, the Division A Final Plat included a Critical Areas Ordinance Note ("CAO") that indicated that regulated critical areas were located on the land and further required that any new development that occurred on the land more than five years after the date of preliminary approval must conform to the current critical area development standards in effect as of the date of construction. While Plaintiff now strenuously objects to the inclusion of the CAO on the Division A Final Plat, there is no indication that it challenged or appealed this decision at the time.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 3

B.     **The Sale of the Whisper Lake Property**

Approximately two months before the Division A Final Plat was recorded at the Whatcom County Auditor's Office, Plaintiff filed for Chapter 11 bankruptcy protection. As part of its bankruptcy case, Plaintiff sold the 38-acre parcel of land to Defendant SHH. The sale was structured into two parts: the March 21, 2022 Vacant Land Purchase and Sale Agreement that related to the Division A Property ("the Division A Purchase Agreement") and the May 3, 2022 Vacant Land Purchase and Sale Agreement that related to the Division B Property ("the Division B Purchase Agreement"). The Division B Purchase Agreement was later amended on June 2, 2022. The bankruptcy court approved the sale and SHH purchase the property "free of liens, claims and encumbrances". Dkt. No. 35, Ex. 8 at 2.

1. **The Delayed Profit Addendum in the Division B Purchase Agreement**

Important to this lawsuit, because final plat approval for the Division B Property had not yet been granted by the County, it was unknown how may buildable lots would be allowed on that property. As such, the Division B Purchase Agreement included a delayed profit addendum ("the DPA"). The DPA acknowledged that the Division B Property is preliminarily approved for 108 buildable lots[2] but noted that the number of approved lots may change "subject to review by Whatcom County." Dkt. No. 35, Ex. 8. As such, the parties agreed that at the time of closing, SHH would pay Plaintiff $2,625,000 "which is consistent with the expectation that Whatcom County will approve for construction [of] no less than 70 lots" on the Division B Property. *Id*. The parties

---

[2] This number is derived from the 145 buildable lots approved in the Preliminary Plat minus the 37 buildable lots approved in the Division A Final Flat.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 4

further agreed that SHH would pay Plaintiff a delayed profit of an additional $35,500 for each additional lot over and above 70 lots that the County approved on the Division B Property, "up to a maximum amount of $1,349,000 which assumes 108 lots." *Id*. The DPA stipulated that the payment for any lots beyond 70 would be due "upon final engineering approval of the site plan for [the Division B Property] by Whatcom County, or at such time it is determined through the Whatcom County review and permitting process the maximum number of lots Buyer will be permitted to build on [the Division B Property]." *Id*.

### C.    SHH's Settlement Agreement with the County

After purchasing the Division A and B Properties from Plaintiff, SHH began working with the County to obtain the final plat authorization for the Division B Property. However, because more than five years had passed since the Preliminary Plat had been approved, the County required a new critical areas review in accordance with the CAO. During 2023 and into 2024, the County and SHH went back and forth over the existence and location of wetlands on the property and eventually executed a settlement agreement in May 2024. Pursuant to the settlement agreement, SHH agreed to reduce the development area on the Division B Property by eight acres and the County agreed to authorize minimum lot sizes as small as 3,500 square feet. Plaintiff claims that these changes reduced the number of buildable lots on the Division B Property from 108 to 88, "thereby severely diminished by no less than $710,000, and as much as $1,349,000, the amount of the final installment payment Plaintiff [] reasonably expected to receive" pursuant to its purchase agreement with SHH. Amended Comp. at ¶ 332. This lawsuit followed.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 5

### III.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Federal Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018) quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

### IV.  DISCUSSION

In its nearly one-hundred-page complaint, Plaintiff asserts multiple claims against the County Defendants, only two of which are based on federal law. Plaintiff alleges that the County Defendants violated his Fourteenth Amendment procedural due process rights and violated his rights under Fifth Amendment Takings Clause. The Court will address each claim in turn.

**A.  Plaintiff's Procedural Due Process Claim**

The Fourteen Amendment's Due Process Clause protects individuals from the deprivation "of life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. The Due Process Clause has both a substantive and a procedural component, and a

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 6

claim under either component requires that the plaintiff specify a protected interest of which it has been deprived. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"). Whether a person has a "property" interest is traditionally a question of state law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) ("The hallmark of property … is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'"). "However, '[a]lthough the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855-56 (6th Cir. 2012) quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005).

Moreover, "to prevent the Constitution from becoming 'a font of tort law' … courts require a plaintiff to demonstrate a constitutionally protected interest with specificity." *Ellis v. Thornsbury*, 2016 WL 3039961, at *16 (S.D. West Virginia May 27, 2016) quoting *Paul v. Davis*, 424 U.S. 693, 700-01 (1976). Thus, the protected interest must be more than a "unilateral expectation"; rather, it must constitute a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see also, Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir. 1981) ("A mere breach of contractual right is not a deprivation of property without constitutional due process of law. Otherwise, virtually every controversy involving an alleged breach of contract by the government or a governmental institution or agency or instrumentality would be would be a constitutional case") (internal citation omitted).

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 7

Here, Plaintiff claims two sources of a constitutionally protected property interest. First, Plaintiff asserts that it has a "vested" interest in in the fact that the "Preliminary Plat covering the Division B Property which [the County Defendants] had previously approved and adopted in February 2016" authorized the development of "108 … buildable lots" on the land. Amended Comp. at ¶ 326. Second, Plaintiff alleges that it "also possesses a retained property interest in its contractual claim for payment" under the terms of the Division B Purchase Agreement it executed with SHH. *Id*. at ¶ 328. Plaintiff claims that the County Defendants violated his procedural due process rights when they entered into a "secret settlement agreement" with SHH to reduce the number of buildable lots on the Division B Property from 108 to 88, "and thereby severely diminished by no less than $710,000, and as much as $1,349,000, the amount of the final installment payment Plaintiff [] reasonably expected to receive … under the … sales agreement." *Id*. at ¶ 332.

Plaintiff is correct that under Washington law, a landowner may have a protected property interest in validly issued permits and approved plats. *See Weinberg v. Whatcom County*, 241 F.3d 746, 753 (9th Cir.2001); *see also*, *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1020 (9th Cir. 2011) (a constitutionally protected property interest in a land use permit exists where state law gives rise to a "legitimate claim of entitlement" to the permit). However, Plaintiff fails to cite to any caselaw, Washington or otherwise, demonstrating that a landowner retains this property interest *after* it has sold the property and the Court's own research failed to locate any such authority. Thus, the Court concludes that any protected property interest Plaintiff may have had in the Preliminary Plat approval of 108 buildable lots on the Division B Property extinguished as soon as Plaintiff relinquished ownership of the property.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 8

Nor did the Division B Purchase Agreement create a constitutionally protected property interest for Plaintiff. As stated above, the Supreme Court has made clear that to have such an interest, Plaintiff must demonstrate more than a "unilateral expectation" of a benefit and, instead, must have a "legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). However, the DPA in the Division B Purchase Agreement clearly establishes that Plaintiff did not have a "legitimate claim of entitlement" that the County would permit SHH to develop 108 buildable lots on the Division B Property. Indeed, the terms of the DPA unambiguously acknowledge that the parties were keenly aware that Whatcom County may change the number of buildable lots allowed on Division B:

> The [Preliminary Plat] approval for The Property, dated February 9, 2016, contemplates the construction of 108 single-family home lots. However, more than Five (5) Years has [*sic*] lapsed since the approval. Consequently, Whatcom County will require The Property to comply with Whatcom County Development Standards in effect as of the date the construction plans are submitted for The Property. Due to changes in certain regulations and standards, such as stormwater detention/retention and wetland mitigation, *it may be necessary to construct less than 108 single-family lots to comply with current Whatcom County Development Standards*.
>
> Buyer has agreed to pay at time of closing for The Property $2,625,000, which is consistent with the expectation that Whatcom County will approve for construction no less than 70 lots.
>
> *Buyer and Seller are aware the lot count may change from the preliminarily approved 108 lots, subject to review by Whatcom County*. As such, Buyer agrees to pay a Delayed Profit of $35,500.00 per lot over and above 70 lots, but up to a maximum amount of $1,349,000, which assumes 108 lots.
>
> *The Delayed Profit shall be due to Seller upon final engineering approval of the site plan for The Property by Whatcom County, or at such time it is determined*

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 9

> *through the Whatcom County review and permitting process the maximum number of lots Buyer will be permitted to build on The Property*. Buyer shall tender to Seller within 30 days the Delayed Profit amount based on the final lot count.

Dkt. No. 35, Ex. 8 at 32 (emphasis added). The uncertainty as to the number of buildable lots that the County would ultimately approve is also addressed in an amendment to the purchase agreement:

> *Buyer and seller are aware lot count may change, subject to jurisdictional review*. Amount of lots, and therefore, payment thereof, will depend on legal, recorded and approved 'building pad' lots from Whatcom County. Delayed profit will be due upon final engineering approval of the site plan for Division B by Whatcom County, or at such time it is determined throuhg [sic] the Whatcom county [sic] review and permitting process the maximum number of Lots buyer will be permitted to building [sic] Division B.

Dkt. No. 35, Ex. 8 at 31 (emphasis added). Therefore, per the clear and unambiguous terms of the parties' agreement, at best, Plaintiff can only claim a legitimate expectation to SHH being permitted to build on 70 lots on the Division B Property. Any lots above and beyond the 70 is an added benefit to Plaintiff under the agreement but in no way a guarantee. Thus, the Division B Purchase Agreement did not create a constitutionally protected property for Plaintiff. *See*, *e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005) (property interests arise only when conferral of benefit is mandatory).[3] Because Plaintiff has failed to establish that it had a constitutionally protected property interest, its procedural due process claim fails as a matter of law. *Sullivan*, 526 U.S. at 59 ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty'.").

---

[3] The Court further notes that contracts that establish a legitimate claim of entitlement under the Due Process Clause typically involve a contract between a private party and the government, something that does not exist here. Few cases allege governmental damage to contracts between private parties and those that do allege government interference with a private employment contract that involves a tenured position or a "for cause" termination provision, once again, something that does not exist here.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 10

B.  **Plaintiff's Fifth Amendment Takings Clause Claim**

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 184 (2019). To state a claim under the Takings Clause, a plaintiff must establish that: (1) it owns "private property" as contemplated under the Takings Clause; (2) the private property was taken for "public use"; and (3) the taking entity did not pay "just compensation" for it. *Zeyen v. Bonneville Joint District, #93*, 114 F.4th 1129, 1139 (9th Cir. 2024). In addition, to be cognizable under the Takings Clause, the "private property" must be a vested constitutionally protected property right. *Id*. at 1141. Thus, to establish a violation of the Takings Clause, Plaintiff must once again "demonstrate that it has a property interest that is constitutionally protected." *Ward v. Ryan*, 623 F.3d 807, 810 (9th Cir. 2010).

Plaintiff cannot meet this requirement. As stated above, Plaintiff does not have a vested property interest in the Preliminary Plat because it no longer owns the property to which the plat applies. *See Novak v. Federaspiel*, 728 F. Supp. 3d 552, 568 (E.D. Mich 2024) ("[T]he government cannot unconstitutionally take what is not owned. It is axiomatic that a plaintiff must be able to prove that they, in fact, *own* the property they allege the government unconstitutional took.") (emphasis in original). Nor does Plaintiff has a constitutionally protected property interest in the profits it hoped to achieve through the Division B Purchase Agreement. Those profits were equivocal, at best, and as such Plaintiff cannot establish a "legitimate entitlement" to them. *See Zeyen*, 114 F.4th at 1141 ("To determine whether a property interest has vested for Taking Clause purposes, the relevant inquiry is the certainty of one's expectation in the property at issue[.]"). Thus, Plaintiff's Takings Clause claim fails as a matter of law.

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 11

## V.   CONCLUSION

Based on the foregoing, the Court HEREBY DISMISSES the federal claims with prejudice and without leave to amend, which Plaintiff has neither requested nor demonstrated it is entitled to. The Court DECLINES to exercise supplemental jurisdiction over the remainder of Plaintiff's state law claims and DISMISSES this lawsuit without prejudice.

DATED this 24th day of March 2025

_____
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER DISMISSING FEDERAL CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND, DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION, AND DISMISSING COMPLAINT WITHOUT PREJUDICE

- 12